IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, a Delaware corporation; VIRGIN RECORDS AMERICA, INC., a California corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; BMG MUSIC, a New York general partnership; and UMG RECORDINGS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ALICE CARDER, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No.:  3:07cv15-MEF |

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE AND OPPOSITION TO DEFENDANT'S MOTION TO AMEND ANSWER TO ADD THIRD PARTIES

Plaintiffs respectfully submit this response to the Court's May 23, 2007 Order requiring Plaintiffs to show cause why Defendant's motion for leave to add third-party defendants should be denied.  Defendant's motion should be denied for the following reasons:

### INTRODUCTION AND SUMMARY OF ARGUMENT

This is a simple case of copyright infringement.  Plaintiffs allege that Defendant used an online media distribution system to download and distribute Plaintiffs' copyrighted sound recordings over the Internet without Plaintiffs' authorization in violation of the Copyright Act, 17 U.S.C. §§ 101 et seq.

Attached as Exhibit B to Plaintiffs' Complaint for Copyright Infringement ("Complaint") is a copy of the "shared" folder on Defendant's computer, which lists the sound recordings that were downloaded and distributed by Defendant. Defendant has admitted in discovery that she downloaded an online media distribution system to her computer and through that system downloaded the sound recordings from Exhibit B to the Complaint. (See Def's Interrog. Resp., attached as Exhibit A). Accordingly, Defendant has essentially conceded her liability for copyright infringement and Plaintiffs respectfully submit that this case can be resolved through summary judgment with little remaining discovery.

The issue now before the Court is whether Defendant should be permitted to complicate and delay these proceedings unnecessarily by attempting to assert unrelated claims against Sharman Networks, Ltd., Sharman License Holdings Limited, Worldwide Nominees Ltd., Geoffrey R. Gee, Global Nominees, and Credit Facilities Ltd., (collectively "Sharman"), the company and its affiliates that Defendant alleges distributed the Kazaa software she used to infringe Plaintiffs' copyrights. For the reasons more fully set forth below, Defendant's motion is baseless and should be denied.

First, Defendant is attempting to add the entities that distributed Kazaa. Defendant, however, did not use Kazaa to download and distribute Plaintiffs' sound recordings. Defendant used a program called "Kazaa Lite." Notwithstanding the similar names, Kazaa Lite is unaffiliated with Kazaa. Indeed, Sharman has itself accused Kazaa Lite and other imitators of infringing Sharman's Kazaa-related copyrights. As such, the proposed third-party defendants have nothing to do with Defendant's infringing activities or with this case.

Second, Defendant's proposed third-party complaint fails to state any claim upon which relief can be granted. Specifically, it is unclear what, if any, cognizable claims Defendant is

seeking to assert. What is clear, however, is that it does not state any claim that would fall within the ambit of Fed. R. Civ. P. 14, which prohibits third-party claims that are separate and independent from a plaintiff's cause of action, even if the third-party claim arises out of the same general set of facts as the main claim.

Finally, allowing Defendant to litigate her proposed claim against Sharman in this case would substantially prejudice Plaintiffs by dramatically enlarging the scope of discovery and proof at trial to address legal and factual issues that have nothing to do with Plaintiffs' claims against Defendant. The addition of foreign third-parties would also delay what would otherwise be a prompt resolution of this case while Defendant attempts to overcome numerous procedural hurdles, including serving process on a foreign entity and establishing this Court's personal jurisdiction, all of which are overlooked in Defendant's motion for leave.

By contrast, denying Defendant's request would cause her no prejudice at all, as she would retain the right to pursue her proposed claims against Sharman or any other third-party in another forum. Indeed, currently pending in the United States District Court for the Northern District of Illinois is a putative class action against Sharman raising the exact same issues that Defendant seeks to raise here. See Lewan v. Sharman Networks Ltd., et al., Case No. 06 C 6736 (N.D. Ill.). Thus, Defendant's proposed claim will likely be resolved in the Lewan case. In the event the class is not certified, or if Defendant decides to opt out or to pursue the correct third-parties, she can assert her third-party claims in another forum, including in the Alabama state courts.

For all of these reasons, Defendant's proposed third-party complaint fails to satisfy the requirements of Rule 14(a) and would not serve the interests of judicial economy. Therefore, Defendant's motion for leave should be denied.

3

## FACTUAL BACKGROUND

Plaintiffs are recording companies who own or control exclusive rights to copyrights in sound recordings. Collectively, they face a massive problem of digital piracy over the Internet. Every month, copyright infringers unlawfully disseminate billions of perfect digital copies of Plaintiffs' copyrighted sound recordings over peer-to-peer ("P2P") networks. See Levi Grossman, It's All Free, Time, May 5, 2003. Indeed, the Supreme Court recently characterized the magnitude of online piracy as "infringement on a gigantic scale." See Metro-Goldwyn-Mayer Studios, Inc., v. Grokster Ltd., 545 US 913, 940 (2005).

On August 31, 2005, Plaintiffs' third-party investigators located an individual with the screen name "www.k-lite.tk_improved_kazaa@K" using a P2P file sharing service to engage in copyright infringement on a massive scale. This individual had 503 audio files on her computer and offered them freely for distribution to the millions of people who use similar P2P services. The investigators further ascertained that this individual used Internet Protocol ("IP") address 68.219.218.163 to connect to the Internet. Pursuant to a federal court subpoena, BellSouth.net, Inc. ("Bellsouth") identified James Carder, Defendant's father, as the owner of the IP address in question. Thereafter, in October 2005, prior to filing suit against Mr. Carder, Plaintiffs notified Mr. Carder that he had been identified by Bellsouth and that they wished to discuss the matter with him, including to explore settlement possibilities. Over a period of months, Plaintiffs, Mr. Carder and Defendant had several conversations regarding the case and engaged in settlement discussions, which did not result in a settlement. During a December 9, 2005 conversation with Plaintiffs, however, Defendant admitted that she had used a P2P service to download music. As a result, on January 3, 2007, Plaintiffs filed a Complaint for Copyright Infringement against Defendant. Defendant answered the Complaint on January 30, 2007. On April 13, 2007,

Defendant responded to Plaintiffs' discovery requests and admitted that she downloaded an online media distribution system to her computer and through that system downloaded the sound recordings on Exhibit B to the Complaint. (See Exhibit A.)

Defendant now seeks leave to add the Sharman entities as third-party defendants to this case. Although not entirely clear, the gravamen of Defendant's third-party complaint appears to be that Sharman "deceptively marketed the use of and sold the KAZAA Product as legal," and that Sharman designed the Kazaa software to share the contents of Defendant's share folder "without letting [Defendant] know that she had made such contents available to others on the KAZAA network." (Def.'s Third-Party Compl. ¶¶ 18, 23.) Thus, Defendant appears to be complaining of some fraud on the part of Sharman. Defendant does not, however, allege any claim that is derivative of Plaintiffs' original claim or a claim in which Defendant is attempting to pass off all or part of her liability onto the third parties through a right to indemnity or contribution. Indeed, there is no allegation by Defendant that Sharman distributed or reproduced any of the copyrighted sound recordings on Exhibit B.

**ARGUMENT**

A.    **Legal Standard.**

A third-party complaint "is a narrow device" used to promote judicial economy when a defendant's right against a third-party is merely an outgrowth of the same core facts that determine the plaintiff's claim. See United States v. Grasso & Sons, Inc., 380 F.2d 749, 751 (5th Cir. 1967).[1] Fed. R. Civ. P. 14(a) controls third-party practice, and provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a

---

[1] All Fifth Circuit decisions rendered prior to October 1, 1981 are binding upon courts in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiffs' claim against the third-party plaintiff.

In the Eleventh Circuit "an entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does arise out of the same general set of facts as the main claim." Grasso & Sons, Inc., 380 F.2d at 751. Thus, a third-party complaint is improper when a defendant seeks to raise a claim against a third-party that is separate or independent from the plaintiff's cause of action. Id. Third-party impleader will only be allowed when the third party liability is in some way derivative of the original claim. Price v. CTB, Inc., 168 F. Supp. 2d 1299, 1301 (M.D. Ala. 2001). That is, third-party impleader will lie only when a defendant is attempting to pass off some portion of her liability to the third-party, i.e. through a substantive right to indemnity or contribution. Id.; see also Coates v. CTB, Inc., 173 F. Supp. 2d 1200, 1202-03 (M.D. Ala. 2001) ("The application of Rule 14 depends on the existence of a substantive right to indemnity or contribution under Alabama law.").

When a proposed third-party complaint is filed more than 10 days after serving the original answer, "the third-party plaintiff must obtain leave on motion." Fed. R. Civ. P. 14(a). The decision whether to deny leave to file a third-party complaint rests within the sound discretion of the district court. Price v. CTB, Inc., 168 F. Supp. 2d 1299, 1301 (M.D. Ala. 2001). Courts routinely deny leave to file third-party complaints that seek to introduce new claims using similar facts to those at issue in the plaintiff's underlying claim. See, e.g., Grasso & Sons, Inc., 380 F.2d at 751 (affirming denial of leave to file a third-party complaint); McDonald, 734 F.2d at 182 (same); Southeast Mortgage Co. v. Mullins, 514 F.2d 747, 750 (5th Cir 1975) (affirming denial of leave to file a third-party complaint that alleged, but for a breach of duty by the third-party defendant, defendant would not be liable to plaintiff); Majors v. American Nat'l Bank of Huntsville, 426 F.2d 566 (5th Cir. 1970) (affirming denial of leave to file a third-party complaint

6

alleging that the third-party defendant's negligence was the proximate cause of defendant's liability to plaintiff).  Applying these standards here, Defendant's request for leave should be denied.

**B.     The proposed defendants have nothing to do with the infringing conduct at issue in this case.**

As a threshold matter, Defendant's motion for leave to add third parties should be denied because Defendant seeks leave to add the wrong third-parties.    Specifically, Defendant's proposed third-party complaint seeks to add those parties who "marketed, distributed and sold a peer to peer (P2P) file-sharing product named KAZAA."  (Def.'s Third-Party Compl. ¶ 14.)  Defendant, however, did not use the Kazaa program to infringe Plaintiffs' copyrights.  Rather, Defendant used a product called "Kazaa Lite" in order to download and distribute Plaintiffs' copyrighted sound recordings illegally.  Thus, in response to Plaintiffs' Requests for Production of Documents, Defendant produced screen shots from her computer showing that her computer had the Kazaa Lite program on it, rather than the Kazaa program.  (See Def.'s Resp. to Pls.' Req. for Prod., attached as Exhibit B).    Defendant's screen name, "www.k-lite.tk_improved_kazaa@K," also indicates Defendant used the Kazaa Lite program as identified by the "k-lite," which is, upon information and belief, short for Kazaa Lite.

Kazaa Lite is not the same program as Kazaa and it is not owned by Sharman.  Indeed, Sharman considers Kazaa Lite to be an unauthorized version of Kazaa, and, perhaps ironically, Sharman has claimed that Kazaa Lite infringes its Kazaa-related copyrights.  (*See* Exhibit C, attached hereto, correspondence and articles regarding Kazaa and Kazaa Lite copyright dispute.)

In short, Kazaa and Kazaa Lite are different programs, and Sharman is not responsible for the Kazaa Lite program Defendant used to infringe Plaintiffs' copyrights.  Thus, Defendant seeks

7

to add the wrong third-party defendants to this action.  As such, the proposed third-party defendants have nothing to do with the infringing conduct at issue in this case.

**C.    Defendant's proposed third-party claim is not proper under Rule 14(a) because it is both factually and legally distinct from Plaintiffs' claims of copyright infringement.**

Not only has Defendant improperly attempted to add the proposed third parties to this action, but also she has failed to identify a proper third-party cause of action in her proposed Third-Party Complaint.  As noted above, Fed. R. Civ. P. 14(a) allows third-party complaints where the claim is derivative of the original claim or where defendant has a substantive right of indemnity or contribution from the third-party defendants.  Price, 168 F. Supp. 2d. at 1301; Coates, 173 F. Supp. 2d at 1202. Defendant has nowhere alleged any of these required elements in her proposed Third-Party Complaint.  For this reason alone, Defendant's motion should be denied.

Separate and apart from Defendant's failure to comply with Rule 14(a), what Defendant does attempt to plead does not state any cognizable cause of action.  Although Defendant's allegations read like fraud-based claims (although such claims are not pled with particularity under Fed. R. Civ. P. 9), one could feasibly construe such claims under any number of causes of action. Indeed it is not even clear whether Defendant is bringing her claims under Alabama state law or federal law.  At most, Defendant describes the third-parties' conduct as "wrongful" and "deceptive," which provides no notice whatsoever as to what is being claimed. (See Def.'s Third-Party Compl. ¶¶ 16-17.)  No defendant should be required to guess at what is being claimed.  The proffered third-party claims at issue here are insufficient as a matter of law.  See Fed. R. Civ. P. 12(b)(6).

Even if Defendant could satisfy Rule 14(a) and could assert some cognizable cause of action, her proposed third party claim still fails because at best, it raises separate and independent

8

claims. As noted above, leave to file a third-party complaint should be denied when it raises separate or independent claims from the plaintiff's cause of action. See, e.g., Grasso, 380 F.2d at 751 (affirming denial of leave to file a third-party complaint); McDonald, 734 F.2d at 182 (same); Southeast Mortgage 514 F.2d at 750 (affirming denial of leave to file a third-party complaint that alleged, but for a breach of duty by the third-party defendant, defendant would not be liable to plaintiff); Majors, 426 F.2d at 569 (affirming denial of leave to file a third-party complaint alleging that the third-party defendant's negligence was the proximate cause of defendant's liability to plaintiff).

Here, Plaintiffs allege that Defendant engaged in direct copyright infringement, a federal claim under the Copyright Act.    (Complaint ¶ 14.)    To prevail, Plaintiffs must show two elements: (1) that Plaintiffs own valid copyrights and (2) that Defendant violated one or more of the exclusive rights in 17 U.S.C. § 106 by, for example, copying or distributing Plaintiffs' copyrighted works. See Feist Pub., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). Copyright infringement is a strict liability offense; Plaintiffs need not demonstrate Defendant's intent to infringe, or even knowledge of infringement, in order to prove copyright infringement. See, e.g., Chavez v. Arte Publico Press, 204 F.3d 601, 607 (5th Cir. 2000) ("Copyright infringement actions, like those for patent infringement, ordinarily require no showing of intent to infringe."); Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995) (intent to infringe is not required under the Copyright Act); Pinkham v. Sara Lee Corp., 983 F.2d 824, 829 (8th Cir. 1992) ("The defendant's intent is simply not relevant [to show liability for copyright infringement]: The defendant is liable even for 'innocent' or 'accidental' infringements."); 4 M. & D. Nimmer, NIMMER ON COPYRIGHT § 13.08, at 13-279 ("In actions for statutory copyright

infringement, the innocent intent of the defendant will not constitute a defense to a finding of liability.").

Although Defendant fails to assert any cause of action in her proposed third-party complaint, she appears to be relying on some fraud-based state law claim concerning the Kazaa Lite file sharing software. (Def.'s Third-Party Compl. ¶¶ 17-24). In Alabama, the elements of a state law claim for fraudulent misrepresentation are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So. 2d 1143, 1159 (Ala. 2003).

Defendant's state law fraud claims and Plaintiffs' federal law copyright claim do not share a single common element. Nor would such claims share common proof. Unlike Plaintiffs' claim against Defendant, which only requires proof of Plaintiffs' valid copyrights and Defendant's infringement of those rights, state law fraud claims against third-parties would require extensive inquiry into what representations were made by third-parties, whether those representations were material, and whether those representations were in fact relied upon by Defendant. None of that evidence would have any bearing on the original claim for copyright infringement that Plaintiffs brought against Defendant.

At best, Defendant's proposed claim against Sharman implicitly suggests that, but for Sharman's misrepresentation concerning legal uses of its software, Defendant would not have engaged in direct copyright infringement and would not be liable to Plaintiffs. In the Eleventh Circuit, however, such alleged "but for" relationships are not, as a matter of law, the proper subject of a third party complaint under Rule 14. Southeast Mortgage, 514 F.2d at 750 ("The suggestion that a separate and independent claim can be made the proper subject of a third party

complaint because, but for the violation of duty alleged the main claim would not have matured, has been rejected by this and other courts.").

In <u>Southeast Mortgage</u>, for example, the Fifth Circuit affirmed the district court's order denying a request for leave to add a third-party defendant where the request was based on the theory that the third party's alleged violation of certain statutes caused the defendant to suffer foreclosure proceedings. <u>Id.</u> ("The sole connection between the two is the contention that, *but for* [the third-party's] failure to adopt and enforce adequate regulations, there would have been no foreclosure proceedings.") For the same reasons as were set forth in <u>Southeast Mortgage</u>, Defendant's proposed claim alleging that, but for Sharman's failure to provide accurate representations regarding the legality of its software, Defendant would not have engaged in copyright infringement, is likewise deficient and not the proper subject of a third-party claim under Rule 14.

### D. Defendant's motion should be denied because litigating the third-party claim in this case would not promote judicial economy, and would severely and irreparably prejudice Plaintiffs.

The purpose of Rule 14 is to promote judicial economy by eliminating duplication in the presentation of evidence when multiple claims turn upon identical or similar proof. 6 Wright, Miller & Kane, *Federal Practice and Procedure 2d*, § 1442 at 290 (1990). When the addition of a third-party introduces unrelated issues and unduly complicates the original suit, however, the request for leave to add the third party should be denied. <u>See, e.g.</u>, <u>Harrison v. Glendel Drilling Co.</u>, 679 F.Supp. 1413, 1422 (W.D. La. 1988); 6 Wright, Miller & Kane, *Federal Practice and Procedure 2d*, § 1443 at 304 (1990).

Here, allowing Defendant to add her proposed claim against Sharman would not promote judicial economy. As explained above, the proposed claim has nothing in common, factually or legally, with Plaintiffs' claims against Defendant. Sharman has nothing to do with the

infringements at issue here, which were committed through Kazaa Lite, not Kazaa.  Thus, allowing the claim would not eliminate any duplication in the presentation of evidence.  On the contrary, allowing the claim would dramatically expand the scope of discovery and proof at trial and significantly delay the resolution of Plaintiffs' claims against Defendant, both of which would cause significant and unnecessary prejudice to Plaintiffs.  Moreover, the discovery would be futile, because  Sharman was neither the inventor nor the distributor of the Kazaa Lite program that Defendant used to infringe Plaintiffs' copyrights here.

Simply stated, Defendant has acknowledged in her discovery responses that she used an online media distribution system or peer-to-peer file sharing service and that she downloaded Plaintiffs' copyrighted sound recordings. (See Exhibit A.)  Thus, she essentially concedes her liability for the infringements at issue in this case, and, Plaintiffs respectfully submit that this case can be resolved through summary judgment with little remaining discovery.  Granting Defendant leave to implead unrelated foreign entities on separate state law claims would, therefore, substantially prejudice Plaintiffs by delaying what would otherwise be a prompt resolution of this case while Defendant seeks to serve process on a foreign entity, establish this Court's personal jurisdiction over that entity, and then obtain discovery from a company located half-way around the world.

Moreover, the delay would be substantial.  Sharman has headquarters in Australia and is organized under the laws of Vanuatu.  Neither Australia nor Vanuatu, however, is a signatory to the  Hague  Convention  on  Service  Abroad.  See http://travel.state.gov/law/info/judicial/ judicial_686.html.  Thus, service of process will not be a simple matter.  Moreover, it is not at all clear that Sharman is subject to personal jurisdiction in Alabama, and separate discovery and court hearings would likely be necessary to resolve this issue alone.

For all of these reasons, allowing Defendant to add the Sharman entities as third-party defendants would transform what is currently a simple case of copyright infringement into a complex, time-consuming, and expensive venture, all to the severe prejudice of Plaintiffs. Conversely, Defendant will suffer no prejudice whatsoever were this Court to deny her motion. Defendant will still be perfectly free to pursue whatever claims she may have against Sharman in a separate proceeding. Indeed, the lead plaintiff in a putative class action currently pending in the Northern District of Illinois raises the very same issues against Sharman that Defendant raises here, i.e., that Sharman misrepresented the nature of its product and failed to warn that use of the product could expose users to claims of copyright infringement. See Lewan, Case No. 06 C 6736, Pl.'s Am. Compl. ¶¶ 53-64, 90-95 (attached as Exhibit D). Thus, the claim Defendant seeks to raise here will likely be resolved in the Lewan case. In the event that the Lewan class is not certified, however, or if Defendant decides to opt out of that putative class, she can assert whatever claims she may have against Sharman or any other third parties in another forum, potentially including in the Alabama state courts. Either way, there exists no justification for complicating this case with an unrelated claim against improper third-parties that can be resolved in another forum.

**CONCLUSION**

For all of these reasons, Plaintiffs respectfully ask this Court to enter an Order denying Defendant's motion for leave to file her third-party complaint, and granting such other and further relief as this Court deems just and necessary.

Respectfully submitted,

DATED:    June 1, 2007                s/Kelly F. Pate
                                      Dorman Walker
                                      WAL086
                                      Kelly F. Pate
                                      FIT014
                                      BALCH & BINGHAM LLP
                                      105 Tallapoosa St., #200
                                      PO Box 78
                                      Montgomery, Alabama 36104
                                      Telephone: (334) 269-3138
                                      Fax: (866) 736-3854
                                      dwalker@balch.com
                                      kpate@balch.com

                                      ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 1, 2007, a copy of the foregoing **RESPONSE TO ORDER TO SHOW CAUSE AND OPPOSITION TO DEFENDANT'S MOTION TO AMEND** was served upon the Defendant via ECF system which will send notification of such filing and/or that a copy of the foregoing has been served upon the following by placing a copy of same in the United States mail, properly addressed and postage prepaid, on this 1st day of June, 2007, as follows:

        ROBIN REYNOLDS
        139 South Broadnax St.
        Dadeville, AL 36853
        *Attorney for Defendant*

                        /s/Kelly F. Pate
                        Kelly F. Pate
                        BALCH & BINGHAM LLP
                        105 Tallapoosa St., #200
                        Montgomery, Alabama 36104
                        kpate@balch.com

14

# EXHIBIT A

## UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| ·ATLANTIC RECORDING CORPORATION, a<br>Delaware corporation; VIRGIN RECORDS<br>AMERICA, INC., a California corporation; SONY<br>BMG MUSIC ENTERTAINMENT, a Delaware general<br>partnership; BMG MUSIC, a New York general<br>partnership; and UMG RECORDINGS, INC., a<br>Delaware corporation<br>     Plaintiffs<br><br>     V.<br><br>ALICE CARDER<br>     Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NUMBER:<br>307CV15-MEF |

### DEFENDANT'S ANSWER TO FIRST INTERROGATORIES

1.    State YOUR date of birth.

    **11/23/1975**

2.    If YOU are under the age of eighteen (18) years, IDENTIFY YOUR parents or. legal
·guardian.

    **Defendant is 31 years of age.**

3.    For each COMPUTER located at YOUR residence that was connected to an Internet account,
IDENTIFY the COMPUTER by brand name; model number; serial number; year; and MAC
address(s) for all computers and for all modems connected to the COMPUTER, including
but not limited to DSL modems, cable modems, and/or dial-up modems.
    **Gateway Profile 4**
    **GWP/N3501399**
    **GWS/N0028870225**
    **DSL modem no longer available**

4.    IDENTIFY computer networking hardware used in the last three years on the COMPUTER
including, but not limited to routers, hubs, and Ethernet cards.

    **There was no networking involved with Defendant's computer due to the fact that**
    **there was only one computer in the home at the time.**

5.    IDENTIFY the owner of the COMPUTER.

Margaret Carder

6.    IDENTIFY all PERSONS who resided with YOU during the three years prior to the date the Complaint in this action was filed.

**Frank Carder, Melanie Sharpe, Will Summerlatte**

7.    IDENTIFY all PERSONS who utilized the COMPUTER during the three years prior to the date the Complaint in this action was filed.

**Frank Carder, Melanie Sharpe, and Will Summerlatte, were the only individuals to use the COMPUTER to the Defendant's knowledge.**

8.    IDENTIFY all PERSONS who utilized the COMPUTER on August 31, 2005.

**The Defendant objects to this interrogatory based on the fact that it is virtually impossible for her to be certain of all persons who utilized the COMPUTER on August 31, 2005.**

9.    IDENTIFY all PERSONS who downloaded an ONLINE MEDIA DISTRIBUTION SYSTEM on the COMPUTER during the three years prior to the date the Complaint in this action was filed.

**Defendant objects to this interrogatory based on the fact that she disagrees with the definition of an ONLINE MEDIA DISTRIBUTION SYSTEM. However; without waiving said objection Defendant states that she was the only person to her knowledge to have downloaded software in dispute.**

10.    IDENTIFY all PERSONS who utilized an ONLINE MEDIA DISTRIBUTION SYSTEM on the COMPUTER during the three years prior to the date the Complaint in this action was filed, including but not limited to any PERSON who downloaded music to the COMPUTER.

**Defendant objects to this interrogatory based on the fact that she disagrees with the definition of an ONLINE MEDIA DISTRIBUTION SYSTEM. However; without waiving said objection Defendant states that she was the only person to her knowledge to have downloaded software in dispute.**

11.    IDENTIFY all PERSONS who utilized an ONLINE MEDIA DISTRIBUTION SYSTEM on THE COMPUTER on August 31, 2005.

**Defendant objects to this interrogatory based on the fact that she disagrees with the definition of an ONLINE MEDIA DISTRIBUTION SYSTEM. However; without waiving said objection Defendant states that she was the only person to her knowledge to have downloaded software in dispute.**

12. State whether YOU contend that any PERSON(S) other than YOU is/are responsible for any or all of the acts of infringement alleged in the Complaint.

**We are not contending that Defendant is responsible for any allegations of infringement made in the Complaint and we certainly have no knowledge if anyone else was.**

13. If YOUR response to INTERROGATORY NO. 12 is anything other than an unqualified no, then state whether YOU have a belief as to who is responsible for any or all of the acts of infringement alleged in the Complaint, IDENTIFY such PERSON(S) and STATE THE BASIS for YOUR belief that such PERSON(S) is/are responsible for any or all of the acts of infringement alleged in the Complaint.

**Defendant objects to this interrogatory based on the fact that it is overly broad and burdensome. Defendant is not in a position to respond to this interrogatory. However; without waiving said objection, Defendant contends that no infringement occurred to her knowledge.**

14. IDENTIFY, by title of recording and recording artist, all SOUND RECORDINGS that YOU have copied or downloaded onto THE COMPUTER using an ONLINE MEDIA DISTRIBUTION SYSTEM during the three years before the Complaint in this action was filed.

**Defendant objects to this interrogatory due to the fact that it is overly broad and burdensome. Furthermore; the Defendant does not have this information.**

15. IDENTIFY, by title of recording and recording artist, all SOUND RECORDINGS that YOU have MADE AVAILABLE from THE COMPUTER using on ONLINE MEDIA DISTRIBUTION SYSTEM during the three years before the Complaint in this action was filed.

**Defendant contends that to her knowledge she did not make any songs available from the computer using an ONLINE MEDIA DISTRIBUTION SYSTEM.**

16. For each of the SOUND RECORDINGS identified in YOUR response to Interrogatory Nos. 14 or 15, IDENTIFY the ONLINE MEDIA DISTRIBUTION SYSTEM used and the dates YOU used them.

**Defendant objects to this interrogatory because Defendant was not aware of using an ONLINE MEDIA DISTRIBUTION SYSTEM. However; without waiving said objection, Defendant paid to download songs from Kazaa.**

17. State all user or screen names YOU ever have used in connection with each ONLINE MEDIA DISTRIBUTION SYSTEM YOU utilized.

**Defendant objects to this interrogatory because Defendant was not aware of using an ONLINE MEDIA DISTRIBUTION SYSTEM.**

18.  IDENTIFY all PERSONS who have used the user screen name "www.k-lite.tk_improved_Kazaa@K" while connected to an ONLINE MEDIA DISTRIBUTION SYSTEM using the COMPUTER.

**Defendant does not have any knowledge of this screen name.**

19.  IF YOU have recorded or burned onto CDs any SOUND RECORDINGS that YOU have downloaded using an ONLINE MEDIA DISTRIBUTION SYSTEM, IDENTIFY, by title of recording and recording artist, each such sound recording, grouping the SOUND RECORDINGS by the CD onto which they were burned.

**To the Defendant's knowledge, she did not record or burn any sound recordings using an ONLINE MEDIA DISTRIBUTION SYSTEM.**

20.  Describe (by type of file, and, if applicable, title of song, artist, and where YOU got the file from) what is contained in each file identified in Exhibit B to the Complaint.

**The only knowledge that Defendant has is that she obtained these songs through Kazaa.**

21.  List which files identified in Exhibit B to the Complaint were downloaded through an ONLINE MEDIA DISTRIBUTION SYSTEM.

**The Defendant is not in a position to answer this interrogatory.**

22.  IDENTIFY who downloaded each file identified in Exhibit B to the Complaint.

**The Defendant does not have enough knowledge to answer this interrogatory.**

23.  IDENTIFY, by title of recording and recording artist, all of the SOUND RECORDINGS contained in the files identified in Exhibit B to the Complaint which YOU deleted from the COMPUTER after YOU received the Complaint in this action.

**The Defendant contends that she did not delete any songs from her computer once she received the Complaint in this action.**

24.  IDENTIFY, by title of recording and recording artist, all of the SOUND RECORDINGS that YOU downloaded to the COMPUTER using an ONLINE MEDIA DISTRIBUTION SYSTEM after YOU received the Complaint in this action.

**Defendant contends that she did not download any songs after she received the Complaint in this action.**

25.    STATE THE BASIS for any Affirmative Defenses alleged in YOUR Answer to Plaintiff's Complaint.

**Defendant objects to this interrogatory on the basis that this invades the Attorney/Client privilege. The Defendant further objects on the grounds that said interrogatory requests this Defendant to reveal information being prepared in anticipation of litigation and not reasonably calculated to lead to the discovery of admissible evidence. Further, it seeks the discovery of the mental impressions, conclusions, opinions, or legal theories of the attorney or other representatives of this Defendant.**

Respectfully submitted this _13th_ day of _April_, 2007.

_Alice L Carder_
Alice Carder
Defendant

_Angela Hill_
Attorney for Defendant
139 S. Broadnax St.
Dadeville, AL 36853

OF COUNSEL:
ROBIN F. REYNOLDS, P.C.
ANGELA J. HILL, L. L. C.
139 South Broadnax Street
Dadeville, Alabama 36853
Telephone:    (256) 825-8251
Facsimile:    (256) 825-8201

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the following persons by United States Postal Service to the location designated, properly addressed and delivery charges prepaid on this the ___ day of April, 2007

Dorman Walker
Kelly F. Pate
BALCH & BINGHAM LLP
105 Tallapoosa Street, Suite 200
PO Box 78 (36101)
Montgomery, Alabama 36104

# EXHIBIT B

**UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| ATLANTIC RECORDING CORPORATION, a ) | |
| Delaware corporation; VIRGIN RECORDS ) | |
| AMERICA, INC., a California corporation; SONY ) | CASE NUMBER: |
| BMG MUSIC ENTERTAINMENT, a Delaware general ) | 307CV15-MEF |
| partnership; BMG MUSIC, a New York general ) | |
| partnership; and UMG RECORDINGS, INC., a ) | |
| Delaware corporation ) | |
|     Plaintiffs ) | |
| ) | |
|    V. ) | |
| ) | |
| ALICE CARDER ) | |
|    Defendant ) | |

### DEFENDANT'S ANSWER TO FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

1.   All DOCUMENTS CONCERNING any registration by YOU as user of any ONLINE MEDIA DISTRIBUTION SYSTEM.
   **Defendant does not have any requested documents at this time. However; Defendant reserves the right to supplement if she discovers any of the requested documents.**

2.   All SOUND RECORDINGS that are stored on th hard drive of the COMPUTER that YOU copied or downloaded using an ONLINE MEDIA DISTRIBUTION SYSTEM within three years before the Complaint in this action was filed.
   **No sound recordings exist on the hard drive.**

3.   All SOUND RECORDINGS stored on the hard drive of THE COMPUTER that YOU ever MADE AVAILABLE via an ONLINE MEDIA DISTRIBUTION SYSTEM within three years before the Complaint in this action was filed.
   **No sound recordings exist on the hard drive.**

4.   All DOCUMENTS CONCERNING any SOUND RECORDINGS that YOU have MADE AVAILABLE via an ONLINE MEDIA DISTRIBUTION SYSTEM from the COMPUTER within three years before the Complaint in this action was filed.
   **No documents exist.**

5.   All DOCUMENTS CONCERNING any SOUND RECORDING that YOU copied or downloaded from other users of an ONLINE MEDIA DISTRIBUTION SYSTEM within three years before the Complaint in this action was filed.
   **No documents exist.**

6.   A complete printout of YOUR screen shots depicting any publicly accessible folder on the COMPUTER, listing all SOUND RECORDINGS currently stored in those folders.

No screen shots exist.

7.    All DOCUMENTS CONCERNING any notices received by YOU from any Internet Service
      Provider CONCERNING copyrighted materials.
      **No documents exist.**

8.    All DOCUMENTS CONCERNING communications or correspondence between YOU and any
      ONLINE MEDIA DISTRIBUTION SYSTEM, including, without limitation, e-mail messages,
      messages posted on on-line bulletin boards or in chat rooms, and real-time internet messaging
      messages.
      **No documents exist.**

9.    All DOCUMENTS CONCERNING communications between YOU and anyone else
      CONCERNING any ONLINE MEDIA DISTRIBUTION SYSTEM or the "sharing," "trading," or
      downloading of digital music files, including, without limitation, e-mail messages, messages posted
      at on-line bulletin boards or in chat rooms, and real-time internet messaging messages.
      **No documents exist.**

10.   All DOCUMENTS CONCERNING this lawsuit or any allegations contained therein.
      **Attached.**

11.   All DOCUMENTS supporting any Affirmative Defense alleged in YOUR Answer.
      **Defendant objects to this interrogatory on the basis that this invades the Attorney/Client
      privilege. The Defendant further objects on the grounds that said interrogatory requests this
      Defendant to reveal information being prepared in anticipation of litigation and not
      reasonably calculated to lead to the discovery of admissible evidence. Further, it seeks the
      discovery of the mental impressions, conclusions, opinions, or legal theories of the attorney or
      other representatives of this Defendant.**

12.   All DOCUMENTS CONCERNING all CDs that YOU have recorded or burned from any sound
      recording that YOU downloaded using an ONLINE MEDIA DISTRIBUTION SYSTEM, including
      without limitation the CDs themselves and all lists of the SOUND RECORDINGS that are included
      on the CDs.
      **No documents exist.**

13.   An electronic copy of each of the files identified in Exhibit B to the Complaint.
      **No files exist.**

14.   An electronic copy of each file currently contained in any share folder accessible through any
      ONLINE MEDIA DISTRIBUTION SYSTEM.
      **No files exist.**

15.   An electronic copy of the entire share folder utilized or created in connection with any ONLINE
      MEDIA DISTRIBUTION SYSTEM.
      **No folders exist.**

16.    An electronic copy of the registry files (preferences files if Macintosh) or System Information report (System Profiler report if Macintosh). For purposes of this request, please do the following depending on the operating system(s) of YOUR computer(s):

    A.    For computers running Windows 95, 98, 98SE or ME, copy the files "system.dat" and "user.dat" located in the c:\windows directory and provide a copy of each file.

    B.    For computers running Windows SP, 2000, 2003 or NT4 please do the following to create a system information report file:

        a)    Click on "Start"⇒select "Programs" (or "All Programs")⇒"Accessories" ⇒ "System Tools" ⇒ "System Information"

        b)    In the System Information window, select "Action" ⇒ "Save As System Information File..."

        c)    In the "Save As" window, select a location to save the file and name it "SystemInfo.nfo"

        d)    Provide a copy of the resulting "SystemInfo.nfo" file.

    C.    For Macintosh computers, create a System Profiler report.

        a)    From the Apple Menu, select "Apple system Profiler" ("System Profiler") [alternatively, select "System Profiler" in the "Applications/Utilities" folder or from the Apple Menu click "About this Mac" and click "More Info"]

        b)    With the System Profiler open, select "File" ⇒ "Save."

        c)    If prompted for a name, name the file "SystemInformation"

        d)    Provide a copy of the resulting file.

**Attached.**

17.    A copy of the "screenshot" of THE COMPUTER's Windows Desktop. For purposes of the request, please follow these instructions:

    A.    Start up THE COMPUTER and before running any program press the "Print Screen" button on YOUR keyboard.

    B.    Click the "Start" button and select "Paint" from the "Accessories" menu.

    C.    Select "Paste" under the "Edit" menu in "Paint".

    D.    Under the "File" menu select "Save and save the file as "desktop_screenshot.bmp".

    E.    Close the "Paint" program.

    F.    Click the "Start button and press the "Print Screen" button while the "Start Menu" is open.

    G.    Click the "Start" button and select "Paint" from the "Accessories" menu.

    H.    Select "Paste" under the "Edit" menu in "Paint".

    I.    Under the "File" menu select "Save" and save the file as "start_menu_screenshot.bmp"

    J.    Close the "Paint" program.

    K.    Click the "Start" button and select "All Programs" then press the "Print Screen" button while the "All Programs Menu" is open.

    L.    Click the "Start" button and select "Paint" from the "Accessories" menu.

    M.    Select "Paste" under the "Edit" menu in "Paint".

    N.    Include the files "desktop_screenshot.bmp", "start_menu_screenshot.bmp" and "all_programs_menu_screenshot.bmp" in the backup returned to us.

**Attached**

Respectfully submitted this _13th_ day of _April_, 2007.

_Alice L Carder_
Alice Carder
Defendant

_Angela Hill_
Angela Hill
Attorney for Defendant
139 S. Broadnax St.
Dadeville, AL 36853

OF COUNSEL:
ROBIN F. REYNOLDS, P.C.
ANGELA J. HILL, L. L. C.
139 South Broadnax Street
Dadeville, Alabama 36853
Telephone:     (256) 825-8251
Facsimile:     (256) 825-8201

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the following persons by United States Postal Service to the location designated, properly addressed and delivery charges prepaid on this the _13_ day of April, 2007

Dorman Walker
Kelly F. Pate
BALCH & BINGHAM LLP
105 Tallapoosa Street, Suite 200
PO Box 78 (36101)
Montgomery, Alabama 36104

Owner

E-mail
MSN Explorer

Internet
MSN Explorer

Paint

Super Collapsel II

Bejeweled 2 Deluxe

System Information

Microsoft Office Wor

All Programs

start

Windows Catalog
Windows Update
New Office Document
Open Office Document
Dogs Playing Poker (2)
New Office Document (2)
Set Program Access and Defaults (2)
Set Program Access and Defaults (3)
Windows Update (2)
Microsoft Update
100+ Great Games Vol 2
Accessories
Encore Software
Gateway Utilities
Microsoft Encarta
Microsoft Games
Microsoft Works
Quicken
Roxio Easy CD Creator 5
Startup
Ultimate Game Pak
Microsoft Money 2003
Microsoft Picture It! Photo 7.0
Microsoft Works Task Launcher
MSN Explorer
Remote Assistance
Windows Media Player
Windows Messenger
Click'N Design 3D for AfterBurner(tm)

Kazaa Lite
Microsoft Office
PCA Portrait Works
RCA CDS4100
Sierra
Zone_Com Deluxe Games
Photo Organizer
Ulead Photo Express 4.0 SE
Singing Coach
MECC
Real
Tetris Worlds
RealPlayer
iTunes
QuickTime
GameHouse



System Information report written at: 04/13/07 08:33:14
System Name: ANGELAHILL-PC

[System Summary (C:\Users\Angela Hill\AppData\Local\Microsoft\Windows\Temporary Internet Files\
Content.IE5\YPKOQIS0\SystemInfo.nfo)]


Item     Value
OS Name    Microsoft Windows XP Home Edition
Version    5.1.2600 Service Pack 2 Build 2600
OS Manufacturer    Microsoft Corporation
System Name    CARDERS
System Manufacturer    Gateway
System Model    Profile4
System Type    X86-based PC
Processor    x86 Family 15 Model 2 Stepping 4 GenuineIntel ~1993 Mhz
BIOS Version/Date    SAMSUNG ELECTRONICS CO.,LTD 02PB.20021016.2522.HJU, 10/16/2002
SMBIOS Version    2.31
Windows Directory    C:\WINNT
System Directory    C:\WINNT\system32
Boot Device    \Device\HarddiskVolume1
Locale    United States
Hardware Abstraction Layer    Version = "5.1.2600.2180 (xpsp_sp2_rtm.040803-2158)"
User Name    CARDERS\Owner
Time Zone    Central Daylight Time
Total Physical Memory    1,024.00 MB
Available Physical Memory    755.48 MB
Total Virtual Memory    2.00 GB
Available Virtual Memory    1.96 GB
Page File Space    2.40 GB
Page File    C:\pagefile.sys

# EXHIBIT C

**The New York Times**
nytimes.com

May 12, 2002

# BACKSLASH; In Free-Music Software, Technology Is Double-Edged

By MATT RICHTEL

IMAGINE returning home with a bounty of pirate's booty. Upon reaching shore, you're mugged and the treasure hoisted. You turn for relief to the local constable, who gives you a swift kick in the shins and a public reading of the definition of the word comeuppance.

The analogy is far from a perfect one for what's going on with Sharman Networks, an Internet company with headquarters in Sydney, Australia. But it does help suggest why a few people are giggling when Nikki Hemming, 35, Sharman's chief executive, says she wishes that people would just leave her alone to make an honest living.

Sharman Networks distributes a piece of software called Kazaa. As Napster used to do, the Kazaa network lets people exchange music without charge over the Internet, and they are exchanging it by the boatload. Some 64 million people have downloaded Kazaa within the last year, making it more popular than a video of an Ozzy Osbourne family brunch.

For obvious reasons, the record industry despises Kazaa. All the major record labels have sued Kazaa's creator, Fast Track, a Dutch company, contending that the software is basically a tool used for wholesale piracy of music, and the industry has explored whether to include Sharman in the lawsuit, according to people familiar with the case.

But Ms. Hemming already has her hands full. She has been busy keeping people from ripping off her own bounty.

It seems that while Sharman Networks gives away the Kazaa software, it is hardly a nonprofit company. It insinuates advertising into the Kazaa network, making money each time people download songs. Sharman does not advocate that people download copyrighted files, but it says it doesn't have the means to stop them.

But now some privateers have cut down Sharman's action by making and distributing stripped-down copies of Kazaa. The software still allows users to get on the Kazaa network and exchange free music. But the software removes the ads, which means that Sharman isn't paid. "They are offering Kazaa without the things that make Kazaa commercially viable for us," said Kelly Larabee, a Sharman spokeswoman.

The people at Sharman have a powerful sense of indignity. But some people may wonder if they've fallen a little short in the sense-of-consistency department.

Then there is geography. In this case, as some pirate stories do, this tale involves the high seas of the South Pacific.

Lawyers for Sharman have sent letters to people who they believe are copying Kazaa, but those individuals have not been easy to find. One copycat, who distributes "Kazaa Lite," obscured his identity by using a Web site registered through Tokelau, a group of islands north of Western Samoa.

If you're guessing that the reason to register through Tokelau is not its rich history of tech support, you'd be on the same page as Sharman's lawyer, Judy Jennings. She said people who register domain names through Tokelau are not required to give their names. "There is an implication they're doing it on purpose so they would be hard to find," she said.

Ms. Hemming, however, has been easier to find -- at least for the last two weeks. During that time, she held her first news conference. Before that, a company publicist declined to provide any details about Sharman, like its specific whereabouts.

But in her conference call with the news media, Ms. Hemming divulged that the company is registered in Vanuatu. That's a group of South Pacific islands, which, she said, offers favorable tax status. (Ms. Hemming keeps Sharman's headquarters in Australia, which has favorable status in the restaurant and standard-of-living area.)

In other words, Sharman thinks that the creators of Kazaa Lite are cravenly hiding in Tokelau while Sharman itself operates in the open in Vanuatu. Sharman doesn't like the suggestion that it has spent months being less than candid about its whereabouts.

"It's not that we were hiding," Ms. Larabee said. "It's that we didn't clarify." This distinction between hiding and not clarifying is important, with broad implications. For instance, the accounting firm Arthur Andersen might note that it didn't hide documents related to Enron, just that it failed to clarify the documents would have to be viewed in very thin strips.

But as it pertains to the music issue, what Ms. Larabee and Sharman Networks are getting at is something that many people may know already: Vanuatu is no Tokelau.

Indeed, the people at Sharman see very few parallels between their complaints over copying and those of the record industry. Ms. Hemming says she just wants to make an honest living, and wishes that people would please stop taking what is rightfully hers. She might also wish that people would quit giggling.

Matt Richtel reports on technology for The Times. His column about living and working in the technology maelstrom appears the second Sunday of each month. E-mail: mrichtel@nytimes.com.

---

Copyright 2007 The New York Times Company  |  Home  |  Privacy Policy  |  Search  |  Corrections  |  **XML**  |  Help  |  Con

Case 3:07-cv-06507-MHP- Document N-2   Filed 06/01/2007    Page 34 of 59

 http://www.news.com/

## Google pulls links to Kazaa imitator

By Declan McCullagh
http://news.com.com/Google+pulls+links+to+Kazaa+imitator/2100-1032_3-5070227.html

Story last modified Wed Sep 03 11:33:31 PDT 2003

**In response to a legal threat that invoked the Digital Millennium Copyright Act, Google has removed from its index eight sites that distribute a hacked version of file-swapping service Kazaa.**

The popular search engine took action last month after it received a legal notification from Sharman Networks, owner of Kazaa, claiming that the eight sites contained software that violated the company's "exclusive rights" under U.S. copyright law.

The software, Kazaa Lite, is an unauthorized copy of Kazaa with the pop-up ads removed. These advertisements, often called "spyware," appear every few minutes and cannot be turned off.

Because Sharman Networks receives revenue from those advertisements, it's seeking to force peer-to-peer users to connect using only authorized copies of the software. Another incentive for the company to block illicit versions of Kazaa is that it sells a paid version--without advertisements--called Kazaa Plus that's similar to Kazaa Lite. Last week, Sharman Networks and Avalon Online Distribution, a subsidiary of software publishing company Titus Interactive Group, released an updated version of Kazaa Plus for $29.95.

Google responded to Sharman Networks' notification by including a warning at the bottom of pages that appear when the term "kazaa" is typed in: "In response to a complaint we received under the Digital Millennium Copyright Act, we have removed eight result(s) from this page. If you wish, you may read the DMCA complaint for these removed results."

The complaint lists eight sites, including Kazaalite.tk, Doa2.host.sk, K-lite.tk and Kazaa-lite.tk. Other copyright holders, including the Church of Scientology, have used the controversial DMCA to force Google to remove links to allegedly infringing documents.

"Hacked versions present a significant threat to the stability and security of users' computers by taking the certified Kazaa software and making unstable and potentially damaging modifications," Sharman wrote in a statement Wednesday. "Modified applications have been found to crash frequently and create instabilities."

Kazaa has been a primary target of a legal offensive the Recording Industry Association of America (RIAA) has launched against file-sharing software. Last week, the RIAA filed papers in federal court in Washington in a case relating to file swapper "Nycfashiongirl," who allegedly shared more than 900 songs online, many downloaded from Kazaa.

Case 3:07-cv-00015-MEF-TFM   Document 17-2   Filed 06/01/2007   Page 2 of 45

Copyright ©1995-2007 CNET Networks, Inc. All rights reserved.





September 22, 2003

**VIA FEDERAL EXPRESS AND EMAIL**

Google, Inc.
Attn: Customer Support, DMCA Complaints
██████████ Parkway
Mountain View, California 94043
████████@█████.com

**RE:    NOTICE OF COPYRIGHT INFRINGEMENT**

Ladies and Gentlemen:

We act on behalf of Sharman Networks, Ltd. (the "**Owner**").

As required under Sections 512(c)(3) and 512(d)(3) of the Digital Millennium Copyright Act (17 U.S.C. §§512(c)(3) and 512(d)(3)), we are instructed to place you on notice that:

1.  The Owner is the exclusive owner of the copyrights in and to the Kazaa Media Desktop software, the kazaa.com website and the text, artwork, logos and photographs appearing therein (singly and collectively, the "**Kazaa Material**"); and

2.  Utilizing the search query, "kazaa," at www.google.com, the following search results and sponsored links (the "**Infringing Material**") contain unauthorized copies of the Kazaa Material or unauthorized derivative works of the Kazaa Material which infringe the Kazaa Material and the exclusive rights of the Owner:

    a.  www.kazaa-gold.com
    b.  http://kazaavip.com/index.asp?siteid=kazaavip&ad=google&key=googlekey
    c.  www.kazaalite.tk
    d.  doa2.host.sk
    e.  www.kazaa-lite.tk
    f.  http://www.kazaa-lite.info
    g.  home.hccnet.nl/h.edskes/mirror.htm
    h.  www.kazaa-france.com

Google, Inc.
September 22, 2003
Page 2

      i.  www.mp3-world.net/d/software/programs/ mp3_search/2074.shtml
      j.  www.refosearch.tk
      k.  www.filesharing.net
      l.  www.kl-kpp.net
      m.  www.kazaa.co.kr
      n.  www.eprogramas.com/programas/Intercambio/ Kazaa_Lite_2.4.1.php
      o.  http://www.1md.de

Please immediately remove or disable all access to the Infringing Material.

I have a good faith belief that the use of the Infringing Material is not authorized by the Owner, its agents or the law.  The information in this Notice of Copyright Infringement is accurate and under penalty of perjury, I am authorized to act on behalf of the Owner.

Should you require any further information regarding this matter, please contact me at the address, telephone number or email address indicated below:

      Stubbs Alderton & Markiles, LLP
      ████████████ Boulevard, Suite███
      Encino, California 91436
      Tel: ████████████
      Email: ████████@████████.com

Very truly yours,





## GENGA & ASSOCIATES, P.C.
### A PROFESSIONAL LAW CORPORATION

*ENCINO, CALIFORNIA 91436*

FAX ████████████

@GENGALAW.COM

March 17, 2005

### VIA U.S. MAIL, e-MAIL AND FACSIMILE TRANSMISSION:

To:     GOOGLE INC.
        Attn: ██████████████████████

        ████████████████████████
        Mountain View, CA 94043
        Fax: ████████████████

**Re:  Notice of Copyright Infringement**

To Whom It May Concern:

This firm serves as outside litigation counsel for Sharman License Holdings, Ltd. and Sharman Networks Ltd. (collectively, "Sharman").  As required under Sections 512(c)(3) and 512(d)(3) of the Digital Millennium Copyright Act (17 U.S.C. §§512(c)(3) and 512(d)(3)), and in conformance with Google's posted guidelines for the filing of notices of copyright infringement (the "Guidelines"), the following is hereby submitted:

1. **OWNERSHIP:**

Sharman exclusively holds all rights of copyright in all authorized versions of the "Kazaa" software application, including "Kazaa v3.0," "Kazaa Plus," and the "Kazaa Media Desktop" (collectively, "Kazaa") as  well as any additional intellectual property associated therewith.

2. **THE COPYRIGHTED WORK CLAIMED TO HAVE BEEN INFRINGED:**

The Kazaa software application (see #1 above).

Page 1 of 3

### 3. THE MATERIAL WHICH IS THE SUBJECT OF INFRINGING ACTIVITY AND THAT IS TO BE REMOVED OR ACCESS TO WHICH IS TO BE DISABLED:

See spreadsheet attached as Annex A. Sharman has attempted to make this list as comprehensive as possible to address the problem in one sitting and avoid the need for constant follow-up. However, as demonstrated by the sheer number of misspellings and other stylistic variations identified above, the advertisers may use additional search results which are not specifically mentioned herein. If this proves to be the case, Sharman requests that this notice apply equally to any such variants which may be identified at a later time.

Recall that the issue stems from the cottage industry which has arisen of websites marketing and/or distributing products known as "Kazaa Lite," "KazaaGold," "K-Lite," "Kpp" and/or "K++," in exchange either for direct collection of site-access fees, or perhaps simply to attract Internet traffic. The above-referenced terms typically refer to versions of Kazaa which have had unauthorized alterations performed upon the source code by third parties. These alterations not only violate the terms of the End User License Agreement which Sharman requires Kazaa users to consent in order to use the Kazaa program, but also constitute infringements upon Sharman's rights of copyright in Kazaa.

### 4. MANDATORY STATEMENT:

I HAVE A GOOD FAITH BELIEF THAT THE USE OF SHARMAN'S INTELLECTUAL PROPERTY IN THE MANNER COMPLAINED OF IS NOT AUTHORIZED BY SHARMAN, ITS AGENT, OR THE LAW. I HEREBY STATE THAT THE INFORMATION CONTAINED IN THIS NOTICE IS ACCURATE AND, UNDER PENALTY OF PERJURY, I STATE THAT I AM AUTHORIZED TO ACT ON BEHALF OF SHARMAN FOR THIS MATTER.

Sharman respectfully requests that Google add the URLs listed in the attached spreadsheet to the set of results which are automatically removed from searches using Kazaa-related queries, pursuant to Sharman's previous DMCA complaints. Some of the domain names listed in the spreadsheet are highly similar to those Google currently removes pursuant to the prior DMCA notice, making it apparent that these similar listings are merely new sites used by the same proprietors.

On behalf of Sharman, please accept our sincerest appreciation for Google's cooperation to date. Should you require any further information regarding this matter, do not hesitate to contact me directly via the contact methods listed above.

Sincerely,

for Genga & Associates, P.C.

# EXHIBIT D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | | | |
|---|---|---|---|---|
| CATHERINE LEWAN, | ) | | | |
| | ) | | | |
| Plaintiffs, | ) | | | |
| | ) | | | |
| v. | ) | No. | 06 C 6736 | |
| | ) | | | |
| SHARMAN NETWORKS LIMITED aka | ) | | | |
| SHARMAN NETWORKS LTD, SHARMAN | ) | | | |
| LICENSE HOLDINGS LIMITED, GEOFFREY R. | ) | | | |
| GEE, GLOBAL NOMINEES, and CREDIT | ) | | | |
| FACILITIES LIMITED, | ) | | | |
| | ) | | | |
| Defendants. | ) | | | |

### AMENDED COMPLAINT

NOW COMES the Plaintiff, CATHERINE LEWAN, an Illinois citizen and resident, on

behalf of herself and others similarly situated, by and through her attorneys, MUDD LAW

OFFICES, and complains of the Defendants, SHARMAN NETWORKS LIMITED aka

SHARMAN NETWORKS LTD, SHARMAN LICENSE HOLDINGS LIMITED, GEOFFREY

R. GEE, GLOBAL NOMINEES, and CREDIT FACILITIES LIMITED (collectively, "Sharman

Defendants"), upon personal information as to her own activities and upon information and

belief as to the activities of others and all other matters, and states as follows:

### NATURE OF ACTION

1.      This is an action for fraudulent misrepresentation, deceptive trade practices,

consumer fraud, and related claims.  In this action, Plaintiff, on behalf of herself and others

similarly situated, seeks exemplary and compensatory damages, punitive damages, attorney's

fees and costs.

## PARTIES

2.     SHARMAN NETWORKS LIMITED aka SHARMAN NETWORKS LTD ("SHARMAN NETWORKS") is a Vanuatu Corporation with a registered address, upon information and belief, with BDO Chartered Accountants, BDO House, Lini Highway, PO Box 240, Port Vila, Vanuatu.  SHARMAN NETWORKS owns KAZAA.

3.     SHARMAN LICENSE HOLDINGS LIMITED ("SHARMAN HOLDINGS") is a Vanuatu Corporation with a registered address, upon information and belief, with BDO Chartered Accountants, BDO House, Lini Highway, PO Box 240, Port Vila, Vanuatu. SHARMAN LICENSE HOLDINGS LIMITED is wholly owned by SHARMAN NETWORKS.

4.     WORLDWIDE NOMINEES LTD. is the sole director of SHARMAN NETWORKS and SHARMAN HOLDINGS.  WORLDWIDE NOMINEES LTD. is a Vanuatu Corporation with a registered address, upon information and belief, with BDO Chartered Accountants, BDO House, Lini Highway, PO Box 240, Port Vila, Vanuatu.

5.     GEOFFREY R. GEE is a citizen and resident of Port Vila, Vanuatu, with a principal business address of Raffea House, Kumul Hwy, PO Box 782 Port Vila, Vanuatu.  Upon information and belief, GEOFFREY R. GEE is the sole director of WORLDWIDE NOMINEES LTD.

6.     GLOBAL NOMINEES is a shareholder of WORLDWIDE NOMINEES LTD. Upon information and belief, GLOBAL NOMINEES is a Vanuatu Corporation.

7.     CREDIT FACILITIES LIMITED is a shareholder of WORLDWIDE NOMINEES LTD. Upon information and belief, CREDIT FACILITIES LIMITED is a Vanuatu Corporation.

8.     Each of the individual Defendants above conspired to construct the corporate

2

structure of SHARMAN NETWORKS so as to avoid civil and criminal liability.

    9.    Each of the individual Defendants above engaged in the conduct alleged herein to further their own personal interests and gain.

    10.    Each of the individual Defendants had knowledge of the wrongful conduct in which the Sharman Defendants, individually and collectively, engaged.

## JURISDICTION AND VENUE

    11.    Jurisdiction of this court arises under 28 U.S.C. § 1332 (diversity jurisdiction). The amount in controversy exceeds $75,000.

    12.    This Court has jurisdiction over the Sharman Defendants because the defendants have engaged in commercial activity with, and sold products to, citizens of the United States and, in particular, the State of Illinois. Moreover, the Sharman Defendants have engaged in wrongful conduct from and within the State of Illinois.

    13.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to this action occurred in this judicial district.

    14.    An actual case or controversy has arisen between the parties. The Sharman Defendants deceptively marketed a product designed to contribute to potential infringement of copyrighted works that subjected its users to potential civil liability for copyright infringement.

    15.    Plaintiff and all others similarly situated have been damaged through their use of the Sharman Defendants' product by (a) being named as defendants in federal litigation for copyright infringement and (b) incurring expenses with respect to such federal litigation.

    16.    Moreover, the Sharman Defendants have profited from their wrongful conduct through, among other methods, encouraging and inviting conduct through the use of their product that would expose their customers to civil liability.

17.    Although not invoked within a specific count, this action involves issues of fact and law relating to the Copyright Act, 17 U.S.C. 501, et seq. Consequently, this action does involve a federal question.

## FACTUAL BACKGROUND

18.    This action involves wrongful conduct by the Sharman Defendants for purposes of commercial gain at the expense and detriment of their customers.

### The Relationship Between the Parties

19.    The Sharman Defendants marketed, distributed and sold a peer to peer (P2P) file-sharing product named KaZaA. This included a software product installed by a user on his or her computer as well as the KaZaA network to which such computers could connect through the use of the KaZaA software. Collectively, these items and those related thereto are referred to as the KaZaA Product.

20.    With respect to the Plaintiff, KaZaA came to be installed on a computer connected to the Internet through the Plaintiff's Internet connection obtained through a subscription with an Internet Service Provider.

21.    Through the use of KaZaA on Plaintiff's computer and her Internet connection, various record companies found filenames associated with their copyrighted sound recordings. These record companies eventually filed suit against Catherine Lewan for copyright infringement.

22.    Plaintiff settled with the record companies to resolve the litigation against her that had arisen from the use of KaZaA in relation to her Internet connection.

23.    Thousands of other individuals have faced similar litigation and experienced similar damages though the use of the KaZaA Product.

4

Illinois ARDC: 6257957

### Class Action Allegations

24.    Plaintiff brings this action on behalf of herself, and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, as representatives of the following class: all persons who (a) used the KaZaA Product, (b) have been named as defendants in federal litigation for copyright infringement, and (c) have incurred expenses with respect to such federal litigation.

25.    Plaintiff does not know the exact size of the class, since such information is in the exclusive control of the Sharman Defendants. However, the exact number may be determined by appropriate discovery. Nationwide, the class of persons affected by the Sharman Defendants' conduct consists of at least a few thousand persons and is so numerous that joinder of all members of the class provided for herein is impracticable.

26.    There are questions of both fact and law common to the class. These common questions predominate over any questions affecting only individual members of the class.

27.    Plaintiff and her attorney will fairly and adequately protect the interests of the Class in that the named Plaintiff, like all other members of the Class, has been subject to litigation involving claims for copyright infringement arising from the use of KaZaA and has incurred expenses in relation to such litigation. Therefore, the Plaintiff has been adversely affected by such action in a like manner as all other members of the Class.

28.    A class action is the most fair, just, and convenient manner in which to adjudicate the claims arising out of the Sharman Defendants' conduct. Should individual actions be brought, or be required to be brought by each individual class member, a multiplicity of lawsuits would result and cause undue hardship and expense for the Court and the litigants.

5

## Defendants' Wrongful Conduct

29.    The Sharman Defendants marketed KaZaA as a P2P service that allowed individuals to share files.

30.    The Sharman Defendants deceptively marketed the KaZaA Product as allowing "free" downloads.

31.    The Sharman Defendants deceptively marketed the use of the KaZaA Product as legal.

32.    The Sharman Defendants knew that most users of the KaZaA Product would use the KaZaA Product to catalog and store digital copies of copyrighted sound recordings and films.

33.    The Sharman Defendants encouraged, invited, and solicited such conduct from the public, its customers, and users of the KaZaA Product.

34.    To use the KaZaA Product, an individual user would download the KaZaA software and install it on their computer.

35.    The user could then use the KaZaA Product to catalog files on the individual's computer. These files would be contained within a "share folder."

36.    To increase the sound recordings and films available on the KaZaA network, the Sharman Defendants designed the KaZaA software to create the share folder and make the share folder accessible to anyone using KaZaA software on the KaZaA network. They did so such that neither the KaZaA software nor the individual user's computer would inform the user that this had occurred.

37.    In other words, the Sharman Defendants designed the KaZaA software to share the contents of the individual user's "share folder" without letting the user of the KaZaA

6

software know that he or she made such contents available to others on the KaZaA network.

38.    By increasing the sound recordings and films available on the KaZaA network, the number of KaZaA users would increase in number.

39.    The number of KaZaA users reached more than 100,000,000.

40.    By increasing the number of KaZaA users, the KaZaA network became an increasingly attractive market in which to advertise.

41.    Through increased advertising, the Sharman Defendants' revenue increased exponentially.

42.    The Sharman Defendants designed the KaZaA software to install a number of additional programs ("spyware") on an individual user's computer for nefarious purposes. They did so such that neither the KaZaA software nor the individual user's computer would inform the user that this had occurred.

43.    The spyware employed by the KaZaA software affected computers adversely.

44.    The Sharman Defendants designed the KaZaA software to be nearly impossible to fully eradicate from a user's computer. Consequently, an individual's share folder would remain accessible to the KaZaA Network after the KaZaA software had been removed from the individual's computer.

45.    By automatically sharing the files in the shared folder, KaZaA exposed its users to claims of copyright infringement by making such files accessible to other users of the KaZaA network to download.

46.    The Sharman Defendants knew and continue to know that the use of the KaZaA Product exposes its users to claims of copyright infringement.

47.    The Sharman Defendants trade off the copyright infringing activities of its users.

7

48.     The Sharman Defendants promote themselves to advertisers as having access to a vast audience.

49.     The vast audience exists only because of the availability of copyrighted works the Sharman Defendants have deceptively manufactured.

50.     Owners of copyrighted works have filed suit against the Plaintiff and others similarly situated for making files available for distribution through the share folder created by KaZaA.

51.     The Plaintiff and others similarly situated have been forced to incur expenses in relation to such litigation.  In many cases, as with the Plaintiff, these individuals have been forced to remit a settlement payment to the copyright owners to avoid prolonged and costly litigation.

52.     In 2006, Sharman Networks entered into a settlement agreement with the copyright owners.

Illinois ARDC: 6257957

## CLAIMS FOR RELIEF

## COUNT ONE

### AS AND FOR A FIRST CAUSE OF ACTION

### AGAINST DEFENDANTS

### FRAUDULENT MISREPRESENTATION

53.    Plaintiff hereby incorporates by reference paragraphs 1 through 52 above in this First Count as though fully set forth herein.

54.    The Sharman Defendants falsely advertised and stated that use of KaZaA would be legal.

55.    The Sharman Defendants knew that the intended use of KaZaA would be illegal.

56.    The Sharman Defendants knew that the use of KaZaA as designed by the Defendants would be illegal.

57.    The Sharman Defendants knew their false representations to be untrue.

58.    The Sharman Defendants made the false statements with an intent to induce the Plaintiff and others similarly situated to obtain and use KaZaA.

59.    The Plaintiff and others similarly situated relied upon the false statements of the the Sharman Defendants that use of KaZaA would be legal.

60.    Based on the false statements of the Sharman Defendants, the Plaintiff and others similarly situated obtained and began to use KaZaA.

61.    The Plaintiff's reliance upon the false statements of the Sharman Defendants was justified.

62.    The Plaintiff and others similarly situated have been sued for copyright infringement arising from the use of KaZaA.

63.    The Plaintiff and others similarly situated have suffered harm and have incurred

9

damages in attorneys fees and/or damages paid to those suing them for copyright infringement.

64.    WHEREFORE the Plaintiff on behalf of herself and others similarly situated

seeks recovery of compensatory damages for injuries caused by the Sharman Defendants'

fraudulent misrepresentation.

**COUNT TWO**

**AS AND FOR A SECOND CAUSE OF ACTION**

**AGAINST DEFENDANTS**

**UNIFORM DECEPTIVE TRADE PRACTICES**

**815 ILCS 510**

65.    Plaintiff hereby incorporates by reference paragraphs 1 through 64 above in this

Second Count as though fully set forth herein.

66.    The Sharman Defendants falsely representated that the use of KaZaA was legal.

67.    The Sharman Defendants willfully and intentialy made such false

representations.

68.    The Sharman Defendants configured KaZaA such that its intended use would be

illegal.

69.    The Sharman Defendants configured KaZaA such that its default setting would

make the share folder accessible to the KaZaA network.

70.    The Sharman Defendants configured KaZaA such that it would not inform its

users that the default setting made the share folder accessible to the KaZaA network.

71.    The Sharman Defendants' conduct exposed Plaintiff and others similarly situated

to claims and lawsuits for copyright infringement.

72.    The Sharman Defendants' conduct caused Plaintiff and others similarly situated to

be forced to incur attorney's fees and/or make settlement payments to avoid prolonged and costly

litigation involving claims for copyright infringement.

10

Illinois ARDC: 6257957

73.    By their conduct, the Sharman Defendants have violated the Uniform Deceptive Trade Practices Act, particularly, but not exclusively, 815 ILCS 510/2(a)(5) and (7).  The Sharman Defendants willfully engaged in the deceptive trade practices.

74.    WHEREFORE Plaintiff seeks on behalf of herself and others similarly situated recovery of compensatory and punitive damages for injuries caused by Defendants' violation of the Uniform Deceptive Trade Practices Act.  The Plaintiff on behalf of herself and others also seeks recovery of attorney's fees and costs.

**COUNT THREE**

**AS AND FOR A THIRD CAUSE OF ACTION**

**AGAINST DEFENDANTS**

**CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**815 ILCS 505**

75.    The Plaintiff hereby incorporates by reference paragraphs 1 through 74 above in this Third Count as though fully set forth herein.

76.    The foregoing conduct gives rise to liability under the Illinois Consumer Fraud and Deceptive Business Practices Act, particularly 815 ILCS 505/2

77.    WHEREFORE Plaintiff seeks recovery of compensatory and punitive damages for injuries caused by the Sharman Defendants' violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act. The Plaintiff on behalf of herself and others also seeks recovery of attorney's fees and costs.

**COUNT FOUR**

**AS AND FOR A FOURTH CAUSE OF ACTION**

**AGAINST DEFENDANTS**

**STRICT LIABILITY**

78.    The Plaintiff hereby incorporates by reference paragraphs 1 through 77 above in this Fourth Count as though fully set forth herein.

79.   Defendants produced and marketed the KaZaA Product.

80.   Defendants produced and marketed the KaZaA Product in a manner that was knowingly predisposed to cause its users to be sued to claims for copyright infringement.

81.   Defendants produced and marketed the KaZaA Product in a manner that was knowingly designed to cause havoc and disrupt one's computer.

82.   These conditions were unreasonably dangerous in that the conditions exposed its users to severe statutory penalties and fines for using the KaZaA Product.

83.   These conditions were unreasonably dangerous in that the conditions affected the health of one's computer.

84.   These conditions existed at the time the KaZaA Product left the Defendants' control.

85.   These dangers would not be contemplated by the ordinary user of the KaZaA Product.

86.   These conditions caused the Plaintiff and others similarly situated to suffer damages.

87.   The Plaintiff and others similarly situated have been injured by the KaZaA Product.

88.   WHEREFORE the Plaintiff seeks on behalf of herself and others similarly situated recovery of compensatory and punitive damages for the Sharman Defendants' design, distribution and manufacture of the KaZaA Product under the doctrine of strict liability. The Plaintiff on behalf of herself and others also seeks recovery of attorney's fees and costs.

Illinois ARDC: 6257957

## COUNT FIVE
## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANTS
## NEGLIGENCE – DUTY TO WARN

89.     The Plaintiff hereby incorporates by reference paragraphs 1 through 88 above in this Fifth Count as though fully set forth herein.

90.     The Sharman Defendants had a duty to warn the Plaintiff and others similarly situated that use of the KaZaA Product would make the "share file" accessible to anyone on the KaZaA network.

91.     The Sharman Defendants had a duty to warn the Plaintiff and others similarly situated that use of the KaZaA Product would potentially expose them to civil liability for copyright infringement.

92.     The Sharman Defendants failed to so warn Plaintiff and others similarly situated.

93.     The Sharman Defendants breached their duty to Plaintiff and others similarly situated.

94.     The Plaintiff and others similarly situated have been harmed by the Sharman Defendants' negligence.

95.     WHEREFORE the Plaintiff on behalf of herself and others similarly situated seeks recovery of compensatory damages for the Sharman Defendants' negligent failure to warn.

## COUNT SIX
## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST DEFENDANTS
## NEGLIGENCE – DESIGN DEFECT

96.     The Plaintiff hereby incorporates by reference paragraphs 1 through 95 above in this Sixth Count as though fully set forth herein.

13

97.    The Sharman Defendants had a duty to design a non-defective product.

98.    The Sharman Defendants designed a defective product and breached their duty to Plaintiff and others similarly situated.

99.    The Plaintiff and others similarly situated have been harmed by the Sharman Defendants' negligence.

100.    WHEREFORE the Plaintiff on behalf of herself and others similarly situated seeks recovery of compensatory damages for the Sharman Defendants' negligent and defective design of the KaZaA Product.

**COUNT SEVEN**

**AS AND FOR A SEVENTH CAUSE OF ACTION**

**AGAINST DEFENDANTS**

**UNJUST ENRICHMENT**

101.    The Plaintiff hereby incorporates by reference paragraphs 1 through 100 above in this Seventh Count as though fully set forth herein.

102.    The Sharman Defendants have been unjustly enriched by their wrongful conduct.

103.    The Sharman Defendants have, at a minimum, unjustly retained the benefit of advertising revenue and any profits obtained therefrom arising solely through the use of the KaZaA Product by Plaintiff and others similarly situated.

104.    The Sharman Defendants' unjust enrichment and retention of benefits has been to the detriment of the Plaintiff and others similarly situated.

105.    WHEREFORE the Plaintiff on behalf of herself and others similarly situated seeks recovery of an equitable award of the Sharman Defendants' profits arising from their wrongful conduct, prejudgment interest, and punitive damages under the doctrine of unjust enrichment.

14

Illinois ARDC: 6257957

## **GENERAL**

106.    Where conditions precedent are alleged, the Plaintiff avers that all conditions precedent have been performed or have occurred.

107.    The Plaintiff on behalf of herself and others similarly situated demands a jury trial.

Illinois ARDC: 6257957

## JURY DEMAND

The Plaintiff on behalf of herself and others similarly situated expressly demands a jury

trial.

Charles Lee Mudd, Jr.

## CLASS ACTION

The Plaintiff files this action as a CLASS ACTION pursuant to Rule 23 of the Federal

Rules of Civil Procedure.

Charles Lee Mudd, Jr.

16

Illinois ARDC: 6257957

## PRAYER FOR RELIEF

WHEREFORE, CATHERINE LEWAN accordingly and respectfully prays for judgment against DEFENDANTS SHARMAN NETWORKS LIMITED aka SHARMAN NETWORKS LTD, SHARMAN LICENSE HOLDINGS LIMITED, GEOFFREY R. GEE, GLOBAL NOMINEES, and CREDIT FACILITIES LIMITED as follows:

1.  That CATHERINE LEWAN and all others similarly situated be awarded compensatory damages in an amount to be determined at trial;

2.  That CATHERINE LEWAN and all others similarly situated be awarded punitive damages in an amount to be determined at trial;

3.  That CATHERINE LEWAN and all others similarly situated be awarded attorney's fees and costs in this action;

4.  That the Court enter judgment in favor of CATHERINE LEWAN and all others similarly situated according to the equitable relief sought; and,

17

Illinois ARDC: 6257957

5.     That CATHERINE LEWAN and all others similarly situated be awarded any

such other and further relief as this Court may deem just and proper or to which CATHERINE

LEWAN and all others similarly situated may be entitled as a matter of law or equity.


Dated: Chicago, Illinois
      December 7, 2006

                              PLAINTIFF,
                              CATHERINE LEWAN



                              _____

                              By:  Her Attorney
                                    Charles Lee Mudd Jr.
                                    Mudd Law Offices
                                    3344 North Albany Avenue
                                    Chicago, Illinois  60618
                                    (773) 588-5410
                                    Cook County Attorney No.: 38666
                                    Illinois ARDC: 6257957
                                    cmudd@muddlawoffices.com

18